UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CITIMORTGAGE, INC., | Case No. 2:13-cv-01976-JCM-GWF |
| Plaintiff, | |
| v. | ORDER |
| ALESSI & KOENIG, LLC, et al., | |
| Defendants. | |

Presently before the court is plaintiff CitiMortgage, Inc.'s (hereinafter "plaintiff") motion for summary judgment. (Doc. # 32). Defendants Solana Unit-Owners' Association and Alessi & Koenig, LLC (hereinafter "defendants") did not file a response, and the deadline to respond has now passed.

Also before the court is plaintiff's request for judicial notice. (Doc. # 33).

**I.   Background**

On or about May 9, 2008, Raydalee B. Renaud ("Renaud") opened a revolving line of credit in the amount of $99,000.00, with CitiBank, N.A. (Doc. # 1). This line of credit was secured by a deed of trust on Renaud's property. (Doc. # 1).

Plaintiff is the beneficiary of the deed of trust. (Doc. # 32.) On May 19, 2008, plaintiff recorded the deed of trust. (Doc. # 1.) On November 7, 2012, defendant Solana Unit-Owners' Association ("Solana") recorded a notice of delinquent assessment against the property. (Doc. # 1.)

Defendant Alessi & Koenig, LLC ("Alessi & Koenig") acts as trustee for Solana. (Doc. # 1). On January 31, 2013, Alessi & Koenig recorded a notice of default and election to sell under

homeowners association ("HOA") lien.  (Doc. # 1.)  The notice provided that as of December 27, 2012, the amount due on the property was $3,631.00.  (Doc. # 32.)

On August 30, 2013, Alessi & Koenig recorded a notice of trustee's sale against the property.  (Doc. # 1.)  The notice set the property for sale on September 25, 2013.  (Doc. # 1.)

On September 20, 2013, plaintiff contacted Alessi & Koenig by email requesting a payoff demand for the nine month superpriority portion of the HOA lien.  Plaintiff also requested that the property sale be postponed.  (Doc. # 1).

Alessi & Koenig responded providing a payoff demand for the total amount due to the HOA on the property, $6,930.60.  (Doc. # 1.)  Alessi & Koenig represented that this request was good through the day before the sale.  It also stated that it was unable to provide a payoff demand for the superpriority amount because a foreclosure had not yet occurred on the property.  (Doc. # 1.)

On September 26, 2013, plaintiff contacted Alessi & Koenig requesting an updated payoff demand, as the earlier demand had expired.  (Doc. # 1.)  Plaintiff stated that it was contemplating paying off the account to release the HOA lien.  Plaintiff also asked whether Alessi & Koenig would waive the fees and costs assessed on the demand breakdown, pursuant to its regular practice.  (Doc. # 1.)

Also on September 26, 2013, Alessi & Koenig responded that the sale had been postponed to October 30, 2013.  On October 23, 2013, Alessi & Koenig sent a reduced demand for $6,689.60, good through October 29, 2013.  (Doc. # 1.)  However, it still did not provide a payoff demand for the superpriority amount.

On October 28, 2013, plaintiff filed a complaint for declaratory relief in the instant case. (Doc. # 1.)  Plaintiff sought a judicial declaration that its interest would not be affected by an HOA foreclosure sale.  (Doc. # 1.)

Alternatively, plaintiff sought a declaratory that Solana's superpriority lien was limited to nine months of assessments.  Plaintiff asked the court to declare that its payment of this amount would satisfy the superpriority portion of the lien.  (Doc. # 1.)

On October 31, 2013, Alessi & Koenig informed plaintiff that the sale was postponed to December 4, 2013, to allow time for a payoff to be received.  (Doc. # 32.)  On November 26, 2013,

plaintiff sent a proposed settlement check to Alessi & Koenig in the amount of $1,845.00. (Doc. # 32.)

Plaintiff stated that it would revoke its offer if Alessi & Koenig did not accept it by close of business on December 2, 2013.  Plaintiff also asked defendants to execute a notice of partial release of lien indicating that the superpriority lien had been satisfied and released. (Doc. # 32.)

Defendants accepted the payment and credited it toward the total amount of the lien. However, they refused to acknowledge that this credit satisfied the superpriority portion of the lien. (Doc. # 32.)  On December 4, 2013, Solana held a foreclosure sale on the property. (Doc. # 32.) However, no bids were received, and the property was not sold. (Doc. # 32.)

Plaintiff now moves for summary judgment and seeks a declaration that its payment of $1,845.00, satisfied the superpriority portion of Solana's lien. (Doc. # 32.)

**II.    Legal Standard**

   *i.    Judicial notice*

Federal Rule of Evidence 201 provides for judicial notice of adjudicative facts.  Under Rule 201(b)(2), the court may "judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b)(2).

Rule 201(c)(2) states that the court "must take judicial notice if a party requests it and the court is supplied with the necessary information."  Fed. R. Evid. 201(c)(2).  The court may take judicial notice of public records if the facts noticed are not subject to reasonable dispute.  *See United States v. Corinthian Colls.*, 655 F.3d 984, 998-99 (9th Cir. 2011); *see also Intri-Plex Tech., Inv. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) (citations and quotation marks omitted).

   *ii.   Summary judgment*

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323-24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the non-moving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

Pursuant to Local Rule 7-2(d), an opposing party's failure to file a timely response to any motion constitutes the party's consent to the granting of the motion and is proper grounds for dismissal. LR 7-2(d). A court cannot, however, grant a summary judgment motion merely because it is unopposed, even where its local rules might permit it. *Henry v. Gill Indus., Inc.*, 983 F.2d 943,

4

949-50 (9th Cir. 1993); *see also Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th Cir. 2003) (a district court cannot grant a motion for summary judgment based merely on the fact that the opposing party failed to file an opposition).

Even without an opposition, the court must apply standards consistent with Federal Rule of Civil Procedure 56, determining if the moving party's motion demonstrates that there is no genuine issue of material fact and judgment is appropriate as a matter of law. *Henry*, 983 F.2d at 950; *see also Clarendon Am. Ins. Co. v. Jai Thai Enters., LLC*, 625 F. Supp. 2d 1099, 1103 (W.D. Wash. 2009).[1]

**III.    Discussion**

    *i.    Judicial notice*

Plaintiff asks the court to take judicial notice of the deed of trust; notice of delinquent assessment; notice of default and election to sell under homeowner association lien; and notice of trustee's sale of the property. (Doc. # 33.) Plaintiff attaches certified copies of these documents to its request. (Doc. # 33.) Each of these documents was recorded with the Clark County recorder's office. (Doc. # 33.)

These documents are a matter of public record. Further, defendants have not filed any opposition to plaintiff's request. The court finds that the facts contained in these documents are not subject to reasonable dispute. Accordingly, the court will take judicial notice of the above-mentioned documents.

    *ii.    Summary judgment*

Plaintiff seeks a declaratory judgment that the superpriority portion of Solana's lien has been satisfied. (Doc. # 32.) Plaintiff contends that the parties dispute only the proper interpretation of Nevada Revised Statute 116.3116(2) and the amount of the superpriority portion of Solana's lien. (Doc. # 32.)

The Declaratory Judgment Act provides that "any court of the United States, upon the filing

---

[1] "[S]ummary judgment cannot be granted by default, even if there is a complete failure to respond to the motion." Fed.R.Civ.P. 56, 2010 cmt. to subdivision (e). The court may only grant summary judgment if "the motion and supporting materials . . . show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

5

of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a).

The court agrees that there is no genuine issue of material fact in this case. Defendants did not file a response to plaintiff's motion for summary judgment, and the parties' filings do not indicate any factual dispute. Rather, it appears clear that the parties dispute the effect of plaintiff's payment to Solana on Solana's superpriority lien.

In order to determine whether plaintiff is entitled to a declaratory judgment regarding the superpriority lien's status, the court will first examine the parties' legal interests under Nevada Revised Statute 116.3116. The court will then look to the amount of the superpriority lien and the effect of plaintiff's payment to Solana on that interest.

   A.  *NRS 116.3116*

NRS 116.3116(1) gives an HOA a lien on its homeowners' residences for "any assessment levied against that unit or any fines imposed against the unit's owner from the time the . . . assessment or fine becomes due." NRS 116.3116(1).

NRS 116.3116(2) provides that a first deed of trust has priority over an HOA lien. *See* NRS 116.3116(2) ("A lien under this section is prior to all other liens and encumbrances on a unit except . . . [a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent . . . ." NRS 116.3116(2)(b).

However, NRS 116.3116(2) also states that the HOA lien has superpriority status over a first deed of trust "to the extent of the assessments . . . which would have become due in the absence of acceleration during the 9 months immediately preceding institution of an action to enforce the lien . . . ." NRS 116.3116(2).

As the Nevada Supreme Court has explained,

As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

*SFR Inv. Pool 1 v. U.S. Bank*, 334 P.3d 408, 411 (Nev. 2014).

The holder of a first deed of trust may pay off the superpriority interest in order to keep its interest from being extinguished upon foreclosure of an HOA superpriority lien. *See id.* at 414 ("But as a junior lienholder, U.S. Bank could have paid off the SHHOA lien to avert loss of its security . . . ."); *7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A., et al.*, 979 F.Supp.2d 1142, 1149 (D. Nev. 2013) ("If junior lienholders want to avoid this result, they readily can preserve their security interests by buying out the senior lienholder's interest.") (citing *Carillo v. Valley Bank of Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers Co.*, 611 P.2d 1079, 1083 (Nev. 1980)).

These cases establish plaintiff's rights in the face of an HOA superpriority lien. Pursuant to the foregoing statute, Solana's superpriority interest is limited to nine months of assessments. If plaintiff paid this amount in full, Solana's remaining interest is subordinate to plaintiff's first deed of trust. Accordingly, the court will now examine whether plaintiff paid the requisite amount and the effect of this payment on priority of the parties' interests.

B.   *Plaintiff's payment*

Solana's superpriority interest is limited "to the extent of the assessments . . . which would have become due in the absence of acceleration during the 9 months immediately preceding institution of an action to enforce the lien . . . ." NRS 116.3116(2). Nevada Revised Statute 116.3116 does not include late charges or collection fees as a part of this calculation. *See* NRS 116.3116.

The superpriority lien portion consists of "the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges," while the subpriority piece consists of "all other HOA fees or assessments." *SFR Inv. Pool 1*, 334 P.3d at 411; *see also 7912 Limbwood Ct. Trust*, 979 F.Supp.2d at 1150 ("The superpriority lien consists only of unpaid assessments and certain charges specifically identified in § 116.31162.").

Further, the Nevada Supreme Court has concluded that "institution of an action to enforce the lien" indicates the commencement of foreclosure proceedings by the HOA. *See SFR Inv. Pool 1*, 334 P.3d at 415 (holding that the phrase may refer to either judicial or nonjudicial foreclosure proceedings). "[T]he word 'action' is used . . . as a way to measure the portion of an HOA lien that has superpriority status." *Id.* (citation omitted).

7

Accordingly, Solana's superpriority lien is limited to the nine months of HOA assessment fees immediately preceding Solana's recording of its notice of default and election to sell, which occurred on January 31, 2013. (Doc. # 33.) Alessi & Koenig's payoff proposal forwarded to plaintiff includes a breakdown of the HOA fees, late charges, and collection costs due on the property. (Doc. # 32.) Plaintiff provides proof of payment to Alessi & Koenig in the amount of $1,845.00. (Doc. # 32.)

Plaintiff explains that this amount reflects nine months of assessments in the amount of $205.00 each. In fact, the assessment amounts from September, 2012, to January, 2013, were only $199.00 per month. However, $205.00 reflects the monthly rate for the assessments for the remaining relevant months. Therefore, as plaintiff notes, $1,845.00, actually exceeds the amount due for nine months of assessments. (Doc. # 32.)

Alessi & Koenig's payoff proposal does not include any additional superpriority fees or costs under NRS 116.3116. The fee breakdown for the relevant time period includes only monthly assessments, late charges, collection costs, and collection administration fees. As a result, payment exceeding nine months of assessment charges suffices to discharge the superpriority portion of Solana's lien.

Based on the foregoing, plaintiff has met its burden of demonstrating that there is no genuine issue of material fact in the case and that it is entitled to judgment as a matter of law. Plaintiff provided payment sufficient to cover the superpriority portion of Solana's lien. Accordingly, plaintiff's motion for summary judgment will be granted.

Plaintiff is entitled to a declaratory judgment that its payment to Solana satisfied the superpriority portion of Solana's lien. The remaining portion of Solana's lien is subordinate to plaintiff's deed of trust on the property.

**IV.    Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiff's request for judicial notice, (doc. # 33), be, and the same hereby is, GRANTED.

/ / /

1 | IT IS FURTHER ORDERED that plaintiff's motion for summary judgment, (doc. # 32),
2 | be, and the same hereby is, GRANTED.
3 | DATED THIS 8th day of January, 2015.

_____
JAMES C. MAHAN
UNITED STATES DISTRICT JUDGE